UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                   Case No. 3:21-mj-1067-MCR

ADAM AVERY HONEYCUTT

_____

## MOTION FOR REVOCATION OF MAGISTRATE JUDGE'S ORDER ON DETENTION

The Defendant, Adam Honeycutt, under Title 18, United States Code, Section 3145(b), respectfully requests this Court to (i) revoke the order of detention filed February 19, 2021, and (ii) and remand the case for the setting of bail and/or conditions of release. In support, the defendant states:

**I.**     **PROCEDURAL HISTORY**

On February 10th, 2021, a criminal complaint was filed (arising from conduct allegedly occurring on January 6th, 2021) charging Mr. Honeycutt with knowingly entering or remaining in any restricted building or grounds without lawful authority under 18 U.S.C. § 1752(a) and violent entry and disorderly conduct on capitol grounds under 40 U.S.C. § 5104(e)(2). (Doc.1). Each count is a misdemeanor and the defendant faces imprisonment of not more than twelve months on the first count and a mere six months on the second.

Although the complaint generally refers to the all-encompassing title under the statute as to the second count ("Violent Entry and Disorderly Conduct") and only generally cites to 40 U.S.C. § 5104(e)(2), Mr. Honeycutt is not charged with any violent actions as evidenced by the statement of facts attached to said complaint that serves as the supporting document for the charges filed by the FBI. In said statement, the more particular subsection of the statute (40 U.S.C. § 5104(e)(2)(G)) that defendant is being charged with in the second count is cited on the final page where it makes clear that he is only accused of merely parading, demonstrating, or picketing on capitol grounds. (Doc. 1).

On February 11th, 2021 Mr. Honeycutt was peacefully arrested by law enforcement at his home in Clay County, Florida and had his initial appearance before United States Magistrate Monte C. Richardson. At the outset, the United States advised that it was prepared to recommend bail and release but for one issue involving a comment in the pretrial services report regarding Mr. Honeycutt not wanting to submit to a urine test. (Doc. 13, p. 7). That was the only reason offered by the United States for why it thought Mr. Honeycutt may be a risk for non-appearance in court. (Doc. 13, p.7-8). At the time this representation was made, the marijuana and firearms found were known to the Government, yet that was not a concern voiced when the hearing began.

Counsel for the Government then went on to say, "If he's not willing to submit to his drug testing as required by pre-trial services, then I think that I have no choice but to ask for detention." (Doc. 13, p.8). Thus, at the time, it appeared that was the only issue to address before ordering the release of Mr. Honeycutt.

The Court then asked Mr. Honeycutt about the urine testing, to which Mr. Honeycutt assured the magistrate judge that he would submit to it. (Doc. 13, p. 8). In fact Mr. Honeycutt followed through on that promise later that same day where the results showed positive only for marijuana, exactly what everyone had expected. No other drugs or medications were found in his urine. (Doc.14, pp. 31-32). Although that should have ended the inquiry allowing the discussion to shift towards issues involving release, the hearing took a somewhat unexpected turn when questions pertaining to the "underlying facts" were asked of the United States. (Doc.13, p.9).

It should be noted that this is not the first time this Honorable District Court and many others have presided over similarly situated and charged defendants. As mentioned at the hearing, several have come before magistrate judges facing the same exact two charges and have been immediately released. The FBI has cast a wide net in arresting those accused of intruding upon capitol grounds on January 6th, 2021, but to date undersigned counsel is not aware of

any who have the same charges that were not released.[1]

In responding the magistrate's inquiry, counsel for the government gave a synopsis of the allegations outlined in the statement of facts. (Doc. 13, p.9). When asked if an image of an unknown hand holding what appears to be a chair or table leg of some sort was used as a weapon (something never alleged in the reports), the United States conceded that there was no such suggestion but for some reason began to offer assertions into matters not a part of the record or the statement of facts from which she was reading. (Doc. 13, p. 11).[2]

Instead of staying on script with the facts alleged in the FBI's report, counsel for the United States made un-founded claims never before alleged that Mr. Honeycutt was "actively participating in the attempt to breach the capitol and riot inside of the capitol." (Doc. 13, p. 11). Of course no such claims were made by the FBI, nor was Mr. Honeycutt charged with such actions. To the contrary, Mr. Honeycutt was only accused of parading, picketing, and demonstrating while inside restricted buildings or grounds. To be sure, others who were actually being accused of this more egregious type of behavior at the capitol that day were charged with higher level offenses such as obstruction of congress, entering restricted areas with deadly weapons, and battery on law

---

[1] That is not to say that others have not been detained who face the same two misdemeanor charges. Undersigned counsel of course cannot readily access all the other cases across the country, but it is unlikely that detention is the norm in these cases.
[2] The government asserted there were undisclosed photos of Mr. Honeycutt exiting through a window and later seen holding a 2X4 that could not be determined what it was used for, if anything. Said images were never produced.

4

enforcement officers, some of whom have been released. (See e.g., U.S. v. Richard Barnett, Case No. 1:21-cr-0038-CRC; U.S. v. Mark Lefingwell; charged with assaulting/impeding officers: Released).

Counsel for the United States also referenced what it saw as "incongruous" statements by Mr. Honeycutt during his pre-trial interview regarding where he lived. (Doc. 13, p. 15). Although Mr. Honeycutt stated he lived in Punta Gorda, he also mentioned he had daily contact with his girlfriend. (Doc. 13, p.15). However, having daily "contact" with someone does not necessarily mean physical in-person contact and can mean a variety of different things such as telephonic contact as well. Honeycutt also stated he had "daily contact" with his brother in North Carolina. Obviously, that does not mean he was implying he had daily in-person contact with him in North Carolina. The recommendation outlined in the pre-trial report was for release with the stated conditions.

When called upon to speak, undersigned counsel advised the court that at all times material to the investigation Mr. Honeycutt was willing to voluntarily surrender once notified of a criminal complaint being filed. (Doc. 13, p.17). Evading apprehension was never a concern in this case. Counsel for the United States confirmed that they knew of Mr. Honeycutt's willingness to cooperate in that regard. (Doc. 13, p.19). The fact that Mr. Honeycutt advised the FBI of the presence of firearms in the house before the FBI made its way

5

inside the house was offered to the court to support the position that Mr. Honeycutt was committed to continued cooperation. Undersigned counsel also assured the court that the house was then free and clear of all firearms. (Doc. 13, 17-18). Arguments were made that because Mr. Honeycutt lacked a significant criminal past and had no previous failures to appear weighed in favor of release. (Doc. 13, p. 18).

At the conclusion of the hearing on February 11, 2020, the magistrate judge apparently thought the government had been requesting detention by stating, "Let me—let me just say this. I know initially the Government was seeking detention because of Mr. Honeycutt's unwillingness to comply with pre-trial services." (Doc. 13, p.19). To the contrary, the Government actually stated it would continue to discuss terms and conditions of release so long as Mr. Honeycutt agreed to the urine test. (Doc. 13, p.8). Such an agreement would allay any concerns it might have with Mr. Honeycutt's non-appearance at future court dates. *Id.* Mr. Honeycutt did in fact later submit to the urine test. The Government never put forth a motion, written or otherwise, requesting detention or a detention hearing at the February 11, 2021 initial appearance.

In its Order Of Detention Pending Trial, the magistrate judge stated "At the initial appearance held on February 11, 2021, the Government moved for temporary detention and requested continuance of the detention hearing." (Doc. 11, p.1). The transcript reflects that it was the court that was moving for

detention and a detention hearing, not the Government. The magistrate judge stated that he was not inclined to release Mr. Honeycutt and that he would set the matter for a detention hearing. (Doc. 13, p.19). This ruling was not made in response to any motions.[3]

At the detention hearing the following week on February 16th, 2021, counsel for the Government again referenced Mr. Honeycutt's willingness for a voluntary surrender, and that he did volunteer to come out and meet the FBI agents when they advised they were outside his home. (Doc. 14, p.5). Mr. Honeycutt also volunteered that there were "legal" firearms in the house as well as marijuana. *Id.* The Government then continued on in detail about his marijuana use, and an unexpected reference to an un-disclosed expert opinion that some of the firearms had "traveled in interstate commerce". (Doc. 14, p. 9). Said allegations had not been previously disclosed and did not relate at all to the instant charges Mr. Honeycutt faced. In fact, at the time, Mr. Honeycutt was not charged with anything having to do with the firearms.

Ms. Corwin later offered testimony to serve as a custodian in the event the Court would set such a condition of Mr. Honeycutt's release. (Doc. 9). Ms. Corwin's un-refuted testimony established Mr. Honeycutt would reside with her within the Middle District of Florida, that Mr. Honeycutt had stable employment, and that she would abide by all conditions regarding her

---

[3] The Government simply stated, after the court's ruling on detention and its intention on holding Mr. Honeycutt, that it did not oppose continuing for a detention hearing. (Doc. 13, p.20).

7

obligations as a custodian. (Doc. 14, pp. 11-14).

On cross, the Government spent an inordinate amount of time questioning Ms. Corwin on the small amount of marijuana found in the garage and small amount found in the master bedroom. In an attempt to discredit Ms. Corwin, the United States confronted her with an old request for an injunction filed against Mr. Honeycutt occurring *twelve years ago* that was dropped and never followed through on. (Doc. 14, pp. 19-20).

The relevance of the marijuana and the firearms were overstated by the government and should never have taken center stage at the detention hearing as they did. Instead, the law surrounding detention hearings as stated 18 U.S.C. Sec. 3142 should have taken precedence at the hearing. In its final arguments, the Government suggested Ms. Corwin was "well-intentioned" and "seems to have her stuff together" but reasoned that because of the petition she filed twelve years ago sheds doubt on her fitness to serve as a custodian. (Doc. 14, p.29).

Counsel for Mr. Honeycutt then proffered arguments for release. When referencing the photos in the statement of facts, the magistrate judge interjected and asked counsel if "breaking into the U.S. Capitol is a serious matter." (Doc.14, p. 39). The allegations clearly do not involve assertions that Mr. Honeycutt did anything to "break" into the capitol. Although he is charged with entering or remaining within, he is not believed to have had anything to do with damaging property as a means to enter the capitol.

The Government then turned once again to other cases involving differently situated individuals accused of higher crimes arising from the events occurring on January 6th, 2021. Examples they offered included the person accused of stealing Nancy Pelosi's laptop as if that had some bearing on this case. (Doc. 14, p. 42). The magistrate judge then also referenced other crimes committed by other persons such as those who assaulted police officers. The court asked, "There were law enforcement officers that were assaulted that day?" (Doc. 14. P. 43). Mr. Honeycutt was never alleged to have been a part of any violence whatsoever, especially not involving the police.

Counsel for Mr. Honeycutt argued that he should be released pursuant to 18 U.S.C. 3142(b) and also referenced 3142(c) in the event the court wanted to impose conditions on release. (Doc. 46). The Government on the other hand made no specific requests with respect to detention or release. This would leave one with the impression that their concerns about Mr. Honeycutt not taking the urine test (they cited concern over non-appearance on this issue) was addressed when he in fact submitted to it.

In its oral pronouncement, the magistrate judge said of Mr. Honeycutt's charges, "Those charges, in and of themselves, appear to be somewhat minor. They are misdemeanors." (Doc. 14, p. 48). However, the court went on to say that the nature and circumstances of this offense are "Quite disturbing." (Doc. 14, p.48). However, instead of making findings of fact as to why Mr.

Honeycutt's actions were "disturbing" there again was yet another reference to other cases involving other actions not associated with Mr. Honeycutt's charges. (Doc. 14, p. 49). The Court went on to discuss what other defendants did in committing acts of violence against capitol security, members of congress and against congressional staff, actions that Mr. Honeycutt was never accused of or charged with. The Court's final ruling was that there are no conditions or combination of conditions that will assure the safety of the community. (Doc. 14, p. 50). There was no argument or finding that non-appearance was a reason for detention.

### STANDARD OF REVIEW

"A district court reviews de novo a magistrate judge's pre-trial release order." *United States v. Megahed*, 519 F. Supp. 2d. 1236, 1241 (M.D. Fla. 2007); *see also United States v. Hurtado*, 779 F.2d 1467, 1481 (11th Cir. 1985). "Review by the district court contemplates an independent consideration of all facts properly before it." *Megahed*, 519 F. Supp. 2d. at 1241 (internal citation and quotation marks omitted).

*De novo* review does not require this Court to hold a *de novo* hearing, as long as the Court exercises independent consideration of all the facts properly before it. *United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987)*; United States v. King*, 849 F.2d 485, 489-90 (11th Cir. 1988) (discussing *Hurtado* and *Gaviria*).

10

## BASIS FOR RELEASE AND REVOCATION OF DETENTION ORDER

The Defendant, Mr. Honeycutt, seeks revocation of the Magistrate Judge's Order of Detention pending trial because the defendant is charged only with the afore-mentioned misdemeanors which are not of the type enumerated under 18 U.S.C. § 3142(f) that allow for a detention hearing to begin with. Even if detention (instead of release) was properly considered by the magistrate Judge, the detention order should be revoked nonetheless because the United States has not carried its burden in proving by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any person and the community, nor does the preponderance of the evidence show that there are no conditions or combination of conditions that exist to reasonably assure the Defendant's appearance. Furthermore, the factual findings made by the magistrate Judge are not supported by the record. 18 U.S.C. § 3142 (f) allows for detention hearings only upon a proper motion in cases involving:

1. A crime of violence (or certain un-related offenses).
2. A crime involving life in prison or death.
3. A federal narcotics offense with a potential sentence of ten years or more.
4. Any felony following convictions for two or more offenses described above.

5. Any non-violent felony offense involving minors, weapons or failure to register.

6. A serious risk of flight; or

7. A serious risk that the person will attempt to obstruct justice or to threaten, injure or intimidate a witness or juror.

Because this statute does not apply in Mr. Honeycutt's case, there was no authority to conduct a detention hearing, much less ordering detention. In fact, the Government never sought detention in the first place as stated above. The magistrate Judge, on its own, detained Mr. Honeycutt after the initial appearance and ordered a detention hearing. (Doc. 11, p.19). Although the magistrate judge stated the government had been seeking detention, the record does not reflect that.

In its oral pronouncement at the February 16, 2021 the magistrate judge never made any findings or rulings that there was a fear Mr. Honeycutt would not appear for court. However, in its detention order, the magistrate judge found under 18 U.S.C. § 3142(e)(1) that no condition or combination of conditions would reasonably assure the appearance of Defendant as required and the safety of any other person and the community. (Doc. 11, p.3). Said statute does not authorize pretrial detention upon proof of danger to the community other than from those offenses which will support a motion for detention. As the court in *United States v. Himler,* 797 F.2d 156 (3d Cir. 1986) held:

'We held in *Perry* that while there is a substantive liberty interest in freedom from confinement, that interest is not violated by Section 3142( e) in authorizing the pretrial detention of persons found to be in a very real sense; distributors of dangerous drugs and users of firearms in the commission of crimes of violence. . . Since *Perry* involved a statutorily-specified crime, we did not address the question, presented here of whether the statute authorizes pretrial detention upon proof of danger to the community other than those offenses which will support a motion for detention. We now hold that it does not.'

*Himler* involved a case where the defendant was facing charges involving the production of false identification and where the record also showed past convictions for similar acts. In reversing the district court's order affirming detention, the court stated, "However, detention may be ordered only after a hearing pursuant to the provisions of subsection (f)." No where in the detention order under review here is this subsection even referenced or cited to. (Doc.1).

*U.S. v. Ploof* 851 F.2d 7 (1st Cir. 1988), also involved a motion to revoke a detention order issued by a magistrate judge. The Defendant in *Ploof* argued that his charges (involving various charges ranging from bank fraud to interstate transportation of stolen property) did not fall under the statutorily enumerated offenses that authorize detention on grounds of dangerousness to the community. The "dangerousness" that the United States complained of arose out of a

13

separate legal proceeding that involved a plot by the defendant to kill his girlfriend's husband. At the time, the defendant's girlfriend and husband were involved in a divorce proceeding and the detention order there relied on this alleged plot in making a finding that no conditions existed which would reasonably assure against danger to persons or the community. *Id.*

In agreeing with the defendant, the *Ploof* Court held that § 3142(f) does not authorize a detention hearing whenever the government thinks detention would be desirable, but rather limits such hearings to the instances outlined in 3142(f). "We believe, however, the structure of the statute and its legislative history make it clear that congress did not intend to authorize preventive detention unless the judicial officer first finds that one of the § 3142(f) conditions for holding a detention hearing exists." *Id; (See also U.S. v. Byrd,* 969 F.2d 106 (5th Cir. 1992). The court went on to point out that although the alleged plot by the defendant may in fact constitute obstruction in the other unrelated cases, the Bail Reform Act was not meant to be invoked to safeguard other proceedings unconnected to the federal proceeding that gave rise to the defendant's bail hearing.

The same issue exists here as the magistrate Judge placed heavy emphasis on un-charged and un-related potential offenses involving firearms. In the detention order, the court referenced an Indictment that was filed against Mr. Honeycutt two days after the detention hearing, yet relied on that to support the idea that those charges should somehow impact the analysis under § 3142. As the *Byrd* Court held, the Bail Reform Act was not meant to be invoked to safeguard

other proceedings. Those charges will come with their own separate initial appearance and hearings under Rule 5 where the government is free to make arguments in favor of detention *in that separate case* should it chose to do so.

As it did at the hearing, the magistrate wrote in its order that the actions of others at the capitol that day (e.g., those who committed "violence") should be attributed to Mr. Honeycutt. (Doc. 11, p. 4). Other findings of fact not supported by the record, but included in said order included a contention that Mr. Honeycutt engaged in "desecration" of the capitol building. *Id.*

Even if issues involving Mr. Honeycutt's drug use and owning of a passport were properly before the court, the statute contains a list of conditions to address these issues. Passports are routinely surrendered as well as imposing requirements for certain defendants to undergo drug evaluations pending trial. The record also contained un-refuted evidence that both the home where Ms. Corwin resides and the home he owns in Punta Gorda are within the Middle District of Florida.

Thus, in this case, Mr. Honeycutt may only be detained where the record supports that he either presents a serious risk to obstruct justice, threaten, injure or intimidate a witness or juror, or that he will flee. 18 U.S.C. 3142(f)(2). However, the detention order issued by the magistrate judge makes no such reference (f)(2) or findings under (f)(2). Because none of these risks were referenced in this case (nor do they exist in any event), this Motion to Revoke should be granted.

WHEREFORE, the Defendant respectfully requests this Court revoke the detention order and immediately order the release of Mr. Honeycutt

>Respectfully submitted,
>
>L. Lee Lockett

By:  */s/ L. Lee Lockett*
L. Lee Lockett
Lockett Law
Florida Bar No.: 0128120
1548 The Greens Way, Suite 2
Jacksonville Beach, Florida 32250
Telephone:   (904) 858-9818
Facsimile:    (904) 858-9819
E-mail: lee@lockettlaw.net

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Laura Taylor
Assistant United States Attorney

                                    */s/ L. Lee Lockett*
                                    L. Lee Lockett
                                    Attorney for Defendant